## APPEAL OF BENJAMIN H. READ.

Docket No. 5664. Promulgated March 5, 1927.

1. The purchase of assets and the assumption of liabilities of a corporation by the owner of practically all of the stock *held* to be merely a step in, rather than a separate transaction from, the dissolution of the corporation.

2. A corporation was dissolved and its assets were purchased for a fixed sum by its sole stockholder, who also assumed its liabilities, and the Commissioner, in determining the gain resulting to the stockholder from the dissolution, computed the net worth of the assets at the date of the transfer by including accounts receivable and liabilities therein at their face value. The stockholder claimed that the accounts receivable were without value and that the Commissioner's determination of net worth was excessive. It appearing from the evidence that the liabilities were satisfied by the stockholder subsequent to the tax year at a discount sufficient to offset the amount of the accounts receivable, and, further, that the stockholder subsequently recovered a substantial portion of the accounts receivable, *held,* that the Commissioner's determination must be approved.

*Thomas F. Cadwalader, Esq.*, for the petitioner.
*W. Frank Gibbs, Esq.*, for the Commissioner.

This is an appeal from the determination of a deficiency in income and profits taxes for 1920 in the amount of $5,125.78. It is alleged

that the Commissioner erred in his computation of the gain realized by the petitioner on the liquidation and dissolution of a corporation of which he owned practically all the stock, in that in his computation the Commissioner included the notes and bills receivable at an amount in excess of their value at the time they were taken over by the petitioner.

FINDINGS OF FACT.

The petitioner resides at Baltimore, Md., and is engaged in business as a coal merchant, with offices in the Maryland Trust Building.

In 1907 his business, which had been conducted as an individual enterprise since 1892, was incorporated in the State of Delaware under the name of Lynah & Read, Inc. The total authorized capital stock of $50,000 was divided into 500 shares having a par value of $100 per share, 494 shares of which were issued to the petitioner. For this stock, $7,500 was paid in cash and the remaining $42,500 was set up on the books against good will.

In 1920 the petitioner decided to dissolve the corporation and to continue the business in his individual capacity. He purchased the assets of the corporation, consisting of cash, coal, and accounts and bills receivable, for $32,000, and assumed its liabilities. On October 11, 1920, the date on which the dissolution was effected, the corporate books disclosed the net worth of the business as $88,192,63. In computing the gain the Commissioner excluded the item of good will and stock represented thereby in the amount of $42,500; reduced inventory by $4,358.89; eliminated a liability of $9,980.12 carried as "additional tax due 1917"; added an additional liability of $39 on account of additional tax for 1915; and made the necessary adjustment of surplus resulting from these changes, thereby arriving at a net worth of $51,274.86 for the assets of the corporation.

The principal items listed in bills receivable consisted of nine notes for the aggregate amount of $25,447.54 advanced by Lynah & Read, Inc., to the Carbon Creek Coal Co. Prior to October 11, 1920, the date on which the petitioner acquired the business of Lynah & Read, Inc., these notes were presented for payment and were returned protested. At the instigation of the petitioner the five endorsers, the president, treasurer, and three directors of the Coal Company, joined in judgment notes and one of them offered $20,000 in settlement of his liability on all claims against the corporation, amounting to $60,000, which offer was rejected. A trustee was appointed to take over the affairs of the Carbon Creek Coal Co. and on or about July 2, 1923, he paid to the petitioner $11,680.43 on the claim of Lynah & Read, Inc. At the time the advances represented by these notes were made, the endorsers submitted a financial statement showing their net worth as $110,000. The principal item in this state-

ment was a tract of land in Kansas, listed at a value of $75,000, of which an undivided seven-tenths interest was owned by one of the directors. The petitioner subsequently, in 1925, entered suit on the judgment and levied on the endorsers' interest in the land and settled the case by accepting a mortgage for $4,000. Considering this mortgage as cash, the total amount remaining unpaid, including principal, interest, and expenses, was $16,599.96.

In the accounts payable on October 11, 1920, was a claim of the Tidewater Coal Exchange for $55,614.05. This exchange had been organized during the war for purposes of expediency in the distribution and handling of coal. It was operated in somewhat the same manner as a bank. The medium of exchange was coal instead of dollars. Coal was shipped to the exchange and the broker was credited by the exchange in tons of coal with the amount received. No money was passed or entered on the books, and when coal was withdrawn the broker's account was charged with the amount so drawn. After the war, when restrictions on buying and selling coal were lifted, the records of the exchange disclosed that Lynah & Read, Inc., had overdrawn its account by several thousand tons. The price of coal had greatly increased and a claim was made for settlement for the amount overdrawn at a rate of $10.50 per ton. A draft was drawn on the corporation for that amount but was dishonored when presented for payment. Subsequently an attorney was appointed by the executive committee of the exchange to negotiate the settlement of such claims and on January 3, 1921, he accepted the petitioner's check for $22,587.57 as payment in full. The Tidewater Coal Exchange was later forced into bankruptcy and a trustee was appointed to wind up its affairs. Payment of the full amount of the claim against Lynah & Read, Inc., was demanded, and upon refusal, suit was brought for the balance due. This suit was compromised on December 17, 1923, on payment by the taxpayer of $10,276.60 and a waiver of all right to the amount previously paid. Another liability was a claim by the Pennsylvania Railroad Co. for approximately $1,400 for freight. There was some question as to the validity of the claim at the time of the dissolution of Lynah & Read, Inc. It was contended by the petitioner that the freight had previously been paid and the payment of this amount would result in duplication. A suit brought on the claim was compromised at a saving to the taxpayer of $449.29 of the total amount claimed.

At the time the petitioner took over the business of Lynah & Read, Inc., on October 11, 1920, there were a number of liabilities against the corporation the amounts of which were undetermined. The principal item in this group was income taxes accrued, which the taxpayer estimated at $3,500. They were later determined to be $3,094.56. Another item was made up of the expenses connected

with the settlement of the claim of the Tidewater Coal Exchange. These expenses were estimated at that time to be approximately $1,200. Actual expenses in that connection, as later determined, were $931.96. Another item was composed of sundry expenses and incidentals amounting to $842.54.

In determining the net worth of the assets of Lynah & Read, Inc., as of the date of dissolution, the Commissioner has included in the liabilities the full amount claimed by the Tidewater Coal Exchange, and in the assets of the corporation the face value of the notes of the Carbon Creek Coal Co.

### OPINION.

GREEN: It is the contention of the petitioner that the purchase of the assets of Lynah & Read, Inc., and the dissolution of that corporation constituted two separate and distinct transactions; that no profit was realized on the purchase on the ground that it was not a closed transaction; and further, that even though the purchase be treated as a step in the dissolution of the corporation, the value of the assets received upon dissolution was not in excess of $32,000.

From the facts disclosed by the record, there is little doubt that the purchase of the assets of Lynah & Read, Inc., by the petitioner was merely a step in the dissolution of the corporation and was in effect a mere matter of form. The petitioner had determined to dissolve the corporation and to continue the business in his individual capacity and it mattered little what procedure was followed in effecting the dissolution of the corporation and the transfer of its assets to him so long as it was handled expeditiously. A conversion of the corporate assets into cash would simplify the procedure materially. With the exception of a few qualifying shares he was the sole stockholder, and the corporation having been dissolved, the transfer of the corporate assets to him would be purely a matter of form regardless of the method adopted. Ostensibly there was a sale of assets by a corporate entity to an individual and, standing alone, should be treated as such, but in a case where the result is merely in form, it will be treated as a bookkeeping transaction rather than a sale. *Gulf Oil Corporation* v. *Lewellyn*, 248 U. S. 71. The effect of the various steps was to dissolve the corporation and distribute the assets to the petitioner in liquidation. Such a transaction gives rise to taxable gain measured by the difference between the cost or March 1, 1913, value of the stock, whichever is greater, and the value of the assets received on liquidation.

Only one question is to be determined and that is the net value of the assets received by the petitioner. The assets consisted of

cash, coal (the value of which is not in dispute), and accounts and bills receivable. The petitioner, testifying in his own behalf, stated that he made a careful examination of the accounts receivable and of the accounts payable at the time of dissolution and reached the conclusion that $32,000 represented the net worth of the corporate assets. For the most part, his testimony in support of his conclusion as to the value was limited to subsequent events connected with the final settlement of the accounts in question. From the record it appears that the only account receivable considered doubtful was that of the Carbon Creek Coal Co., amounting to $25,447.54. This account he considered totally bad, but subsequently recovered something over $15,000, leaving $16,599.96, including interest and expenses of collection, unpaid. It was included in the assets at face value by the Commissioner.

Offsetting this doubtful item in accounts receivable, however, were a number of liabilities in the form of claims, which the petitioner's testimony indicates he considered unjust and unreasonable and which he had refused to pay on that ground. The record does not show that he, at any time, considered that he would be required in the end to pay the full amount of these claims. They were also allowed in full by the Commissioner in computing the net worth of the assets. The principal claim was that of the Tidewater Coal Exchange for $55,614.05. It later developed that this claim was settled for a little more than half of the total amount, and that, even though the full amount shown by the notes of the Carbon Creek Coal Co. had been lost, the gain in the settlement of this claim would practically offset such loss. The freight claim of the Pennsylvania Railroad was also settled at a big discount in favor of the petitioner. It also appears that the petitioner overestimated expenses with reference to the expenses in settling these claims and with reference to income taxes which had accrued during the year 1920, prior to the date of dissolution.

After considering the testimony, we find nothing to justify the conclusion that the net worth of the assets was less than the amount found by the Commissioner. In fact, the petitioner's statement of the facts existing as of the date of dissolution and of the subsequent settlement of the accounts fully justified the finding of the Commissioner.

*Judgment will be entered after 10 days' notice, under Rule 50.*